[Cite as *State ex rel. Honda of Am. Mfg., Inc. v. Indus. Comm.*, 2017-Ohio-2627.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Honda of America Mfg., Inc., | : | |
| Relator, | : | |
| v. | : | No. 15AP-1064 |
| Industrial Commission of Ohio and Patricia Dunn, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on May 2, 2017

**On brief:** *Vorys, Sater, Seymour and Pease LLP,* and *Robert A. Minor,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Patsy A. Thomas,* for respondent, Industrial Commission of Ohio.

**On brief:** *Denise L. Devney,* and *Stephanie D. Horn,* for respondent, Patricia Dunn.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Honda of America Mfg., Inc., ("Honda"), commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("the commission"), to vacate its order mailed May 16, 2015 awarding permanent total disability ("PTD") compensation to respondent, Patricia Dunn, and to deny Dunn's application for PTD compensation or, in the alternative, to conduct a new hearing on Dunn's application.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found: (1) the commission did not abuse its discretion by relying on the medical reports of Dr. Urse and Dr. Hoover to find that Dunn was permanently and totally disabled based solely on the allowed conditions in her claim; and, (2) the commission did not abuse its discretion by awarding Dunn PTD compensation without consideration of the non-medical disability factors. Based on these findings, the magistrate decided that Honda's request for a writ of mandamus should be denied.

{¶ 3} Honda timely filed objections to the magistrate's decision. Dunn and the commission timely filed their respective memoranda contra Honda's objections. Having examined the magistrate's decision, conducted an independent review of the record pursuant to Civ.R. 53, and undertaken due consideration of the objections, we overrule Honda's objections and adopt the magistrate's decision, including findings of fact and conclusions of law, as our own.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} It is undisputed that Honda employed Dunn as an assembly worker for approximately 21 years. During that time, Dunn sustained three work-related injuries to her right knee, cervical spine, and right shoulder and rotator cuff in the course of and arising out of that employment. It also is undisputed that all three claims were allowed, that Dunn had multiple surgeries related to her allowed conditions, and that she returned to work after each surgery. The record indicates that Dunn continued working until June 2009, when she accepted a special voluntary separation opportunity offered by Honda. Dunn subsequently applied for and received social security disability benefits.

{¶ 5} On May 5, 2014, Dunn filed an application for PTD compensation. Her application was supported by the October 18, 2013 medical report from her longtime attending physician, orthopedic surgeon, John Urse, D.O. Dr. Urse's report summarized Dunn's treatment history and examination findings. In his report, Dr. Urse opined that Dunn qualified for PTD based on the allowed knee, right shoulder and rotator cuff conditions, for which he did not expect dramatic improvement. He rated her prognosis as poor for sustained employment duties. At the time Dunn applied for PTD benefits, she

No. 15AP-1064

was 56 years of age, had graduated from high school, and was able to read, write, and perform basic math.

{¶ 6} At Honda's request, Dunn was examined by Douglas C. Gula, D.O. on June 27, 2014. In his report, Dr. Gula identified Dunn's allowed conditions, the history of Dunn's claims, identified the medical records he had reviewed, noted Dunn's recitation of her current symptoms, and provided findings of his physical examination of Dunn, including an occupational activity assessment. Dr. Gula opined that Dunn has a 41 percent whole person impairment ("WPI") and that, based solely on the allowed conditions of her claims, is able to perform some sustained remunerative employment, subject to restrictions.

{¶ 7} The commission then referred Dunn to James Hoover, M.D., physical medicine and rehabilitation specialist, for an independent medical examination. In his August 13, 2014 independent specialist report, Dr. Hoover identified Dunn's allowed conditions and the history of Dunn's claims, noted that he had Dr. Gula's June 27, 2014 report for review, and that Dunn had brought to the examination her surgical history, which included bypass surgery and lumbar surgery and fusion. Dr. Hoover's report provided his findings of his physical examination of Dunn, including a physical strength rating. Dr. Hoover opined that Dunn has a 51 percent WPI, which he stated "is the final impairment rating for the allowed conditions," and is incapable of work. (Jan. 25, 2016 Stipulation of Evidence at 111.) Dr. Hoover's report stated that his opinion was based on "today's history and physical examination, review of the records provided, and only the allowed conditions I have been asked to consider in this claim." *Id.* at 110.

{¶ 8} On March 17, 2015, Honda deposed Dr. Hoover as to his conclusion that Dunn was incapable of sedentary work. Dr. Hoover maintained that he had only considered the allowed conditions in Dunn's claims when he opined that she has a 51 percent WPI. Dr. Hoover testified that his examination of Dunn did not note that she had any limitation in the use of her upper left extremity, nor had he commented on any such limitation, because it was not part of the allowed conditions in the claim; he did not consider Dunn's upper left extremity other than as a comparison to the right. Dr. Hoover maintained his opinion that Dunn's physical limitations preclude her from substantial gainful employment.

{¶ 9} A commission staff hearing officer ("SHO") heard Dunn's PTD application request on April 28, 2015. The SHO issued an order May 16, 2015 granting Dunn's application for PTD compensation. The SHO noted that Dunn had been awarded an 18 percent permanent partial disability ("PPD") award under her knee injury claim, a 27 percent PPD for the residuals of her cervical spine injury, and a 12 percent PPD award under her right shoulder claim. The SHO next discussed Dr. Urse's October 18, 2013 medical report, in which he stated that Dunn had been under his care for her right knee and right shoulder complaints, but that he did not specifically treat her cervical spine conditions and so would not comment on those conditions. The SHO noted Dr. Urse's opinion that Dunn qualified for PTD based on the allowed conditions of the two claims for which he treated her, that he did not expect dramatic improvement in her condition, and that her prognosis for sustained employment duties was poor. The SHO found that Dr. Urse's opinion was corroborated by Dr. Hoover's independent specialist report, which also concluded that Dunn was incapable of work.

{¶ 10} The SHO found the opinions of Drs. Urse and Hoover to be persuasive and relied on them to find that Dunn's medical impairments from the allowed conditions in her three claims prohibited her from returning to her former position of employment and from performing any sustained remunerative employment. Consequently, the SHO found Dunn to be permanently and totally disabled, without reference to the non-medical vocational factors listed in paragraph (B)(3) of Industrial Commission Rule 4121-3-34(D)(2)(a). The SHO ordered that Dunn be granted an award of PTD compensation pursuant to R.C. 4123.58(A) commencing October 18, 2013, based on Dr. Urse's report of that date. The SHO further ordered that the award be apportioned among Dunn's allowed conditions in each claim, based on the WPI outlined in Dr. Hoover's report.

{¶ 11} On May 29, 2015, Honda requested reconsideration of the SHO's order. By order mailed June 23, 2015, the commission denied Honda's request. Honda thereafter commenced this action in mandamus.

## II. OBJECTIONS TO THE MAGISTRATE'S DECISION

{¶ 12} Honda has not presented a specifically identified objection to the magistrate's decision, but restates four arguments it presented in its merit brief and oral argument, all of which the magistrate considered and rejected:

No. 15AP-1064

> Relator respectfully submits that the Commission abused its discretion when it awarded [permanent total disability] compensation to [Dunn] for four essential reasons. First, the evidence in the record did not support the Commission's conclusion that Ms. Dunn was permanently and totally disabled from a medical perspective. Second, the Commission failed to conduct an analysis of the non-medical disability factors where the evidence demonstrated that Ms. Dunn was capable of sustained remunerative employment. Third, the staff hearing officer improperly relied upon the report of a physician, Dr. Urse, because the report was defective as a matter of law. Fourth, the Commission abused its discretion where there was no evidence that Ms. Dunn participated in vocational rehabilitation services or made any other efforts to better her situation.

(June 29, 2016 Honda's Objs. to the Mag. Decision at 1-2.)

## III.  LAW AND DISCUSSION

{¶ 13} To be entitled to relief in mandamus, Honda must establish that it has a clear legal right to relief and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph nine of the syllabus.   To do so, Honda must demonstrate that the commission abused its discretion, and "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987).  Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).  Honda must show that the commission's decision is not supported by some evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).  Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as the fact finder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 14} The magistrate identifies Dunn's ability to do any sustained remunerative employment as the relevant inquiry in this matter.  *State ex rel. Domjancic v. Indus. Comm.,* 69 Ohio St.3d 693 (1994).  The magistrate consistently reviews the facts and arguments in this case according to analysis required by Ohio Adm.Code 4123-3-34(D)(2)(a):

No. 15AP-1064

> If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.

*Id.*; App'x. at ¶ 57.

{¶ 15} In its first argument, Honda contends the commission abused its discretion in awarding Dunn PTD compensation because she is not permanently and totally disabled. Honda asserts that there is no evidence that Dunn's upper left extremity is impaired or that she is unable to work with that extremity and, further, that the doctors on whose reports the commission relied in awarding PTD did not find any impairment or limitation regarding Dunn's use of her left arm. Honda points to the report of its vocational specialist, containing the conclusion that Dunn is capable of engaging in sustained remunerative employment. Honda accuses the commission of not bothering itself with analyzing what capabilities Dunn retained. We disagree.

{¶ 16} The commission found that Dunn's allowed conditions arising from her three industrial injuries prevent her from performing sustained remunerative employment. The commission's decision was based on the medical reports of Drs. Urse and Hoover. Therefore, the commission's award of PTD benefits to Dunn is supported by some evidence.

{¶ 17} The magistrate's decision includes a discussion of Ohio Adm.Code 4121-3-34, pertaining to PTD. The magistrate notes that Ohio Adm.Code 4121-3-34(C) specifically provides for the processing of PTD applications, including the requirements that: (1) each application must identify or be accompanied by medical evidence from a physician that supports the application; (2) the medical evidence must be based on a medical examination performed within the 24 months before the application is filed; and, (3) the medical evidence provides an opinion that addresses the injured worker's physical limitations resulting from the *allowed conditions* in the claim(s).

{¶ 18} Honda's insistence that the commission failed to consider Dunn's ability to use her upper left extremity is inapposite. The governing rule limits the scope of medical evidence to allowed conditions. Because no claim had been allowed as to Dunn's upper

No. 15AP-1064

left extremity, it was not permissible for the commission to consider any limitations or lack of limitations concerning that extremity.

{¶ 19} The magistrate appropriately determined that the commission did not abuse its discretion by finding persuasive the reports of Dr. Urse and Dr. Hoover, which provided opinions "concerning the degree of impairment resulting from the allowed conditions in [Dunn's] claim." (App'x at ¶ 53.) Those opinions were based on medical factors and are in full compliance with the relevant law. Doctors who perform examinations for workers' compensation claimants are required to examine and provide findings and conclusions based solely on the allowed conditions in a claim, and non-allowed conditions can neither advance nor defeat a claim. *See State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993).

{¶ 20} In its second argument, Honda contends that the commission failed to conduct an analysis of the non-medical disability factors where the evidence demonstrated that Dunn was capable of sustained remunerative employment. We disagree.

{¶ 21} The magistrate correctly applied Ohio Adm.Code 4123-3-34(D)(2)(a) to find that the commission is not obligated to conduct an analysis of Dunn's non-medical factors, stating that "[t]he medical evidence on which the commission relied supports the conclusion that Dunn was permanently and totally disabled based solely on the allowed conditions in her claims," and that "the commission was not required to discuss the non-medical disability factors." (App'x at ¶ 57.) A medical opinion reliant on non-medical factors cannot be considered "some evidence" on which the commission could rely. *State ex rel. Poneris v. Indus. Comm.*, 10th Dist. No. 02AP-712, 2003-Ohio-2184, ¶ 50.

{¶ 22} Honda in its third argument states that the SHO improperly relied upon Dr. Urse's medical report in that "the report was defective as a matter of law." (Honda's Objs. to the Mag. Decision at 1.) But Honda failed to offer support for this claim in its brief or reply brief. We are left to refer back to Honda's complaint for the requested writ, in which Honda stated that Dr. Urse's report "was conclusory, did not offer any scientific or medical analysis of the effect of the impairments on [Dunn], and stated only that [Dunn] had a 'poor' 'prognosis' for 'sustained employment duties.' " (Nov. 20, 2015 Compl. for Writ of Mandamus at ¶ 14.)

{¶ 23} The magistrate considered and rejected Honda's argument, specifically finding that Dr. Urse's report meets the requirements of Ohio Adm.Code 4123-3-34(C)(1). The magistrate noted in the decision that Dr. Urse was Dunn's treating physician for many years and set forth in the decision detailed findings of Dr. Urse's reports upon which the commission relied. The magistrate found that "the fact that [Dr. Urse] did not summarize all of his office notes in his October 18, 2013 report, does not render his report lacking." (App'x at ¶ 50.)

{¶ 24} Honda's fourth argument claims that the commission abused its discretion because there was no evidence that Dunn participated in vocational rehabilitation services or made any other efforts to better her situation.

{¶ 25} The magistrate appropriately applied the provisions of Ohio Adm.Code 4121-3-34(D)(2)(a) to address Honda's fourth argument. Any question as to whether, or to what extent, Dunn participated in vocational rehabilitative services or made any other efforts to better her situation is immaterial, given that her medical impairment arising from her allowed conditions render her permanently and totally disabled.

{¶ 26} The medical reports of Dr. Urse and Dr. Hoover are "some evidence" on which the commission properly relied in finding that Dunn's allowed conditions precluded her from engaging in sustained remunerative employment. The magistrate correctly concluded that the commission was not required to consider non-disability factors. Consequently, the magistrate did not err in recommending that Honda's request for a writ of mandamus be denied.

## IV. CONCLUSION

{¶ 27} Following an independent review of this matter and giving due consideration of Honda's objection, we find the magistrate properly determined the salient facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of facts and conclusions of law therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

DORRIAN and LUPER SCHUSTER , JJ., concur.

_____

No. 15AP-1064

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel. Honda of America Mfg., Inc.,   :

      Relator,               :

v.                                   :            No.  15AP-1064

Industrial Commission of Ohio and    :        (REGULAR CALENDAR)
Patricia Dunn,

                                :

      Respondents.

                                :

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on June 15, 2016

*Vorys, Sater, Seymour and Pease LLP,* and *Robert A. Minor,* for relator.

*Michael DeWine*, Attorney General, and *Patsy A. Thomas,* for respondent Industrial Commission of Ohio.

Denise L. Devney, and Stephanie D. Horn, for respondent Patricia Dunn.

### IN MANDAMUS

{¶ 28} Relator, Honda of America, Mfg., Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding permanent total disability ("PTD") compensation to respondent, Patricia Dunn, and ordering the commission to deny her application or, in the alternative, ordering the commission to conduct a new hearing on her application.

No. 15AP-1064

Findings of Fact:

{¶ 29} 1. Dunn has sustained three work-related injuries during the course of her employment with relator and those claims have been allowed for the following conditions:

> 97-635509: Tear of medial meniscus right knee; aggravation of pre-existing chondromalacia of the right knee; aggravation of pre-existing osteoarthritis of the right knee.
>
> 00-498385: herniated disc, C6-7; aggravation of pre-existing spondylitic spur, C5-6, with cervical radiculopathy.
>
> 04-868188: Right lateral epicondylitis; right shoulder strain; right rotator cuff tendinitis; acromioclavicular joint arthritis; acromioclavicular joint impingement, right shoulder; rotator cuff tear, right shoulder.

{¶ 30} 2. Dunn has had multiple surgeries related to her allowed conditions and was able to continue working until June 2009 when she accepted a special voluntary separation opportunity offered by relator.

{¶ 31} 3. Dunn filed her application for PTD compensation on May 5, 2014. At the time, she was 56 years of age, indicated that she had applied for Social Security retirement, graduated from high school, and was able to read, write, and perform basic math.

{¶ 32} 4. Dunn's application was supported by a report from her treating physician, John S. Urse, D.O. In his October 18, 2013 report, Dr. Urse summarized Dunn's situation as follows:

> I have treated her with cortisone injections in the shoulder in an attempt to decrease her shoulder pain. She has noted history of her right knee giving out on her causing injury to the right eye, right fifth digit, and striking her forehead. She had some stitches in the forehead as a result of this fall. I spoke with her at that time about filing for disability and told her I would be in agreement with this option secondary to her surgical history and ongoing complaints involving the shoulder and knee. I have noted decreased external ROM in the shoulder. Discussion was held with Patricia regarding a possible bone scan to see if the knee implants were wearing down. She continued to have giving way and popping in the knee along with the limited ROM. Patricia is taking Celebrex, Ultram, Flexeril, and using Lidoderm patches for pain

No. 15AP-1064

control. At her July 2013 visit she was noted to have decreased ROM of the shoulder, a positive two-finger test, positive NEER test, positive Hawkins test, and dramatic weakness on abduction against resistance. We recommended replacement of her knee brace secondary to the brace not fitting properly. These findings have not changed to date. She is receiving steroid injections for the shoulder.

In conclusion, Dr. Urse stated:

It is my opinion she qualifies for permanent total disability based on the allowed conditions of the claims #04-868188 and #97-635509. I do not expect dramatic improvement in her condition and would rate her prognosis as poor for sustained employment duties.

{¶ 33} 5. At relator's request, Dunn was examined by Douglas C. Gula, D.O. In his June 27, 2014 report, Dr. Gula identified the allowed conditions in relator's claims, reviewed the history of those claims, identified the medical records which he reviewed, noted Dunn's current symptoms, and provided his physical findings upon examination. Thereafter, Dr. Gula opined that Dunn has a 41 percent whole person impairment and opined that based solely on the allowed conditions in her claims, Dunn was able to perform some sustained remunerative employment with the following restrictions:

As related to the right knee conditions in Claim #97-635509, she has the following restrictions: Standing would be limited to 5-10 minutes per hour; walking is limited [sic] smooth surfaces, with minimal climbing stairs, no climbing ladders or hills, and no activities requiring balance; she should not perform activities requiring applying strength against bending, and no squatting, kneeling, crouching, stooping, or pedaling. In addition, she may require use of a knee brace and should be allowed to change positions for comfort and be provided breaks of 10-15 minutes at a frequency of once every 2 hours.

As related to Claim #00-498385, noting Ms. Dunn is status post anterior cervical discectomy with fusion, the claimant is capable of the following activities: No lifting over the shoulder; lifting to the level of the shoulder not more than 5 pounds; no extremes of motion including extension or flexion; no extremes of twisting or lateral movement; no climbing ladders; driving a car up to only 2 hours per day. Again, I feel Ms. Dunn should be allowed to change positions

> for comfort and be provided breaks of 10-15 minutes at a frequency of once every 2 hours.
>
> Based upon the conditions in Claim #04-868188, it is my opinion Ms. Dunn requires the following restrictions: No overhead lifting; she is capable of reaching to waist and shoulder level but not more than 12 times per hour with a maximum of 10 pounds of weight; she should not hold the right arm in abduction or flexion continuously; pushing and pulling should be limited to 10 pounds or less.[1]

{¶ 34} 6. The commission referred Dunn to James B. Hoover, M.D., for an independent medical examination. In his August 13, 2014 report, Dr. Hoover identified the allowed conditions in Dunn's claims and discussed the history of those claims specifically noting not only the surgeries she had related to the allowed conditions in her claims, but also noting that she had undergone lumbar surgery and fusion, as well as bypass surgery. Dr. Hoover's findings include:

> Inspection:
> She has cervical paraspinal tightness, more right than left. She has tightness in the upper trapezius, more on the right. She has no swelling or deformity at the shoulder. There is no deformity of the knee. There is a well healed anterior surgical scar of the knee. There is medial and lateral joint tenderness to a mild degree on the right. No swelling or deformity at the right elbow or tenderness.
>
> Range of motion:
> Cervical flexion is 30; extension and side bending are 20. Left rotation is 30, right rotation is 60. The right shoulder flexion is 30, extension 20, abduction 80, adduction 20, internal rotation 50, external rotation 60. She has full motion of the left shoulder. The right knee extends to 0 and flexes to at least 125. Left knee extends to 0 and flexes to 140. Right elbow flexion is 140, extension 0, pronation and supination are 80.

{¶ 35} Dr. Hoover opined that Dunn had a 51 percent whole person impairment due to the allowed conditions and noted the following restrictions:

> Because of the knee problems there would be no crawling, climbing, squatting, or kneeling. She can be on her feet for 10 to 15 minutes at one time, no more than two hours per eight-

---

[1] Dr. Gula's limitations pertain solely to her ability to use her right upper extremity.

> hour day. Because of the right shoulder problems, this limits her lifting to no more than 5 lbs. with her right upper extremity, with no overhead activities, and no pushing or pulling.

{¶ 36} Thereafter, Dr. Hoover concluded that Dunn was incapable of work.

{¶ 37} 7. Relator filed a motion to take the deposition of Dr. Hoover arguing that the limitations he noted would permit Dunn to actually perform at a sedentary work level.

{¶ 38} 8. The deposition of Dr. Hoover took place on March 17, 2015. Counsel first asked Dr. Hoover if he reviewed any medical evidence other than what he noted in his report (the report of Dr. Gula and a surgical history brought to the examination by Dunn). Dr. Hoover responded that it was his general practice to only list those records which were available for him to review.

{¶ 39} Counsel asked Dr. Hoover why he noted that Dunn had full range of motion of her left shoulder when her claim was allowed for injury to her right shoulder. Dr. Hoover responded that he mentioned the left shoulder as a comparison to the limitations Dunn had with her right shoulder. Dr. Hoover maintained that he only considered the allowed conditions in Dunn's claims when he opined that she had a 51 percent whole person impairment, was capable of performing less than sedentary work activities and that, in his opinion, she was incapable of working.

{¶ 40} 9. Relator submitted an employability assessment prepared by Craig Johnston, Ph.D., CRC. In his April 1, 2015 report, Johnston concluded that Dunn's combined age, education and work history, along with her ability to perform sedentary employment, would permit her to return to sustained remunerative employment.

{¶ 41} 10. William T. Cody, MS, performed a vocational assessment at the request of Dunn's counsel. In his April 14, 2015 report, Cody began with the presumption that Dunn was capable of sedentary activities. Despite that assumption, Cody opined that there were no unskilled or even semi-skilled sedentary jobs which can be performed with one hand or only occasional reaching. Cody stated that only highly skilled sedentary work would accommodate Dunn's ability to utilize only one arm and concluded that she did not have the skills that would allow her the opportunity to perform that type of work. As such, considering her allowed injuries, age, education, restricted work history and

physical limitations, Cody concluded that Dunn was not capable of performing sustained remunerative employment.

{¶ 42} 11. Dunn's application for PTD compensation was heard before a staff hearing officer ("SHO") on April 28, 2015. The SHO relied on the medical reports of Drs. Urse and Hoover, specifically noting that, despite repeated questioning by relator's legal counsel, Dr. Hoover maintained that his opinion was based solely on the allowed conditions in the claims. Finding that she was permanently and totally disabled from a medical standpoint, the SHO did not need to and did not discuss the non-medical disability factors.

{¶ 43} 12. Relator filed a request for reconsideration which was denied by order of the commission mailed June 23, 2015.

{¶ 44} 13. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 45} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 46} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

No. 15AP-1064

{¶ 47} The relevant inquiry in a determination of permanent total disability is Dunn's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record, and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 48} Relator argues that the commission abused its discretion by finding that Dunn was permanently and totally disabled based solely on the medical evidence presented. Relator asserts that there is no competent, credible medical evidence to support a finding that Dunn is incapable of performing some sustained remunerative employment. Relator argues that the medical evidence supports a finding that Dunn is capable of work at a sedentary level and, as such, the commission abused its discretion by not discussing the non-medical disability factors.

{¶ 49} Ohio Adm.Code 4121-3-34 pertains to permanent total disability. Ohio Adm.Code 4121-3-34(C) specifically provides for the processing of applications for permanent total disability. Subsection one sets forth the requirements for an application:

> Each application for permanent total disability shall identify, if already on file, or be accompanied by medical evidence from a physician, * * * that supports an application for permanent total disability compensation. The medical examination upon which the report is based must be performed within twenty-four months prior to the date of filing of the application for permanent total disability compensation. The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the injured worker's physical * * * limitations resulting from the allowed conditions in the claim(s).

{¶ 50} The commission relied exclusively on the medical reports of Drs. Urse and Hoover. Relator challenges the report of Dr. Urse arguing that he did not discuss Dunn's physical limitations arising from the allowed conditions. Dr. Urse has been Dunn's

No. 15AP-1064

treating physician for a number of years and is well acquainted with her conditions and the difficulty she has had since the dates of her injuries, subsequent surgeries, and rehabilitation efforts. In his October 18, 2013 report, Dr. Urse explained that both Dunn's knee and shoulder continue to cause her pain and other difficulties. Specifically, Dunn's knee has given out several times and has caused her to fall. Dr. Urse discussed a bone scan to see if the knee implants were wearing down. Dr. Urse knew that Dunn underwent diagnostic and surgical arthroscopy of her right knee with shaving of the patella and trochlea in 1997, as well as a total right knee replacement and patellar replacement in 1999. Thirteen years later, Dr. Urse was concerned that the knee implants were wearing down. With regard to her shoulder, Dr. Urse noted that she had decreased range of motion, dramatic weakness on abduction against resistance, and the testing he administered was positive for shoulder impingement. Dr. Urse was aware that Dunn underwent arthroscopic debridement of right shoulder cuff tendinitis in 2005 and would have been aware that one year later, in 2006, Dunn began experiencing numbness into the fingertips of her right hand and pain. Dr. Urse was aware that Dunn underwent diagnostic and surgical arthroscopy of her right shoulder with rotator cuff repair, subacromial decompression, ligament resection, and partial acromioplasty in 2007. In his October 18, 2013 report, Dr. Urse indicated that he continues to give Dunn steroid injections because of pain she experiences in her shoulder. The fact that Dr. Urse did not reiterate everything he already knew about Dunn's knee and shoulder, the procedures she had undergone and her recovery, and the fact that he did not summarize all of his office notes in his October 18, 2013 report, does not render his report lacking. Instead, the magistrate finds that it does meet the requirements of Ohio Adm.Code 4123-3-34(C)(1), and the magistrate rejects relator's argument.

{¶ 51} Dr. Hoover did include his physical findings on examination in his August 13, 2014 report. Further, relator had the opportunity to depose Dr. Hoover who maintained that his conclusion that Dunn was unable to perform any sustained remunerative employment was based solely on the allowed conditions in her claims. As such, Dr. Hoover's report also meets the requirements of Ohio Adm.Code 4123-3-34(C)(1).

No. 15AP-1064

{¶ 52} At oral argument, counsel for relator clarified its argument and reason for deposing Dr. Hoover. Counsel postulated that Dunn is capable of performing some sustained remunerative employment by utilizing her left upper extremity. Counsel pointed out that Dr. Gula noted that Dunn had no limitations in her ability to use her left upper extremity while Drs. Urse and Hoover did not discuss her ability to use her left upper extremity. Counsel asserted that many people are capable of performing one-handed work, most notably: (1) Robert Dole, who served as a senator for the State of Kansas and ran for president of the United States of America in 1996; (2) Pete Gray, who lost his right arm just above the elbow when he was six years old yet played outfielder for several years in the minor league and one year in the major league; and (3) Bethany Hamilton, the young woman who lost her arm in a shark attack yet competes in surfing events.

{¶ 53} Physicians are required to examine injured workers and provide an opinion concerning the degree of impairment resulting from the allowed conditions in a claim. Both Drs. Urse and Hoover did so. However, counsel asserts that, while Dunn might be limited due to the allowed conditions in her knee and right arm, the commission must determine whether or not she could, nevertheless, perform some sustained remunerative employment using her left hand and upper extremity.

{¶ 54} The magistrate acknowledges that certain work can be performed with one hand/arm. Further, the commission could make the determination that an injured worker is capable of performing some sustained remunerative employment with one hand/arm. However, doctors who perform examinations for workers' compensation claimants are required to examine and provide findings and conclusions based solely on the allowed conditions in a claim, and non-allowed conditions can neither advance nor defeat a claim. *See State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). When doctors discuss non-involved body parts and/or non-allowed conditions, their reports are routinely challenged. Counsel explained however that a doctor should continue to base their opinions on impairment to the allowed body part/allowed conditions, but the commission should then consider a claimant's ability to utilize non-injured body parts and determine whether or not the claimant is capable of working irrespective of the limitations caused by the allowed conditions in their claim.

No. 15AP-1064

{¶ 55} At the time the commission considered Dunn's application, she had significant limitations in her neck, right shoulder, and right knee, all resulting from 20 plus years of assembly line-type work. She was receiving steroid injections because of the pain in her shoulder. The problems she was having with her knee led her doctor to question whether her knee implants were failing. She reports pain in both her shoulder and knee between 7 to 9 on a scale of 1 to 10. She had difficulty driving. Exam findings by all physicians, including Dr. Gula who examined Dunn at relator's request were not normal. The degree of impairment noted by both Drs. Hoover and Gula is significant. Dr. Hoover opined that Dunn had a 51 percent whole person impairment and could not perform sustained remunerative employment, and Dr. Gula found a 41 percent whole person impairment and concluded Dunn could perform sedentary employment.

{¶ 56} To the extent that relator asserts that Dunn has no impairment of her left upper extremity, the magistrate disagrees. Dr. Gula specifically stated, concerning Dunn's shoulders, that "[w]eakness is present in her upper extremities with the right being greater than the left" and that Dunn "denies any difficulties as related to the left shoulder." So, even if relator's argument is given any credence, although she expressed no difficulties using her left shoulder for activities of daily living, Dunn does experience weakness in that shoulder. To the extent that Dr. Gula specifically noted limitations of Dunn's right upper extremity and not her left, it would have been improper for him to have noted restrictions of her left upper extremity. Doctors who examine claimants in workers' compensation cases are to report on and base their opinions on the allowed conditions in a claim. As such, not even Dr. Gula's report supports relator's assertion that Dunn has "no impairment with respect to the use of her left upper extremity."

{¶ 57} Because the medical evidence on which the commission relied supports the conclusion that Dunn was permanently and totally disabled based solely on the allowed conditions in her claims, the commission was not required to discuss the non-medical disability factors. Ohio Adm.Code 4123-3-34(D)(2)(a) specifically provides:

> If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be

No. 15AP-1064

> permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.

{¶ 58} Finding that the commission did not abuse its discretion by relying on the medical reports of Drs. Urse and Hoover to find that Dunn was permanently and totally disabled based solely on the allowed conditions in her claims, the magistrate finds that the commission did not abuse its discretion by awarding her permanent total disability compensation without consideration of the non-medical disability factors. As such, this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).